## E. H. WALDRON *et al.*

*v.*

## AMA MARCIER.

82 550
34a 322
34a 547

82 550
53a 31
53a 49

82 550
89a ²523

82 550
98a ³337

82 550
e104a²273

1. CONTRACT—*to locate a depot within a given time, does not require the erection of a depot building within the time named.* A contract by a railroad

company to locate a depot at a certain place within six months from the date of the contract, is complied with by staking off the ground, building a platform and actually using the premises for depot purposes, within the time limited, although the depot building is not erected within the time named.

2. MEASURE OF DAMAGES — *in trespass.* An instruction, in an action of trespass, where there is no evidence of wantonness or willfulness, should not direct the jury, if they find for the plaintiff, to allow him such damages as they believe, from the evidence, he is entitled to. Such damages as they believe, from the evidence, he has sustained, is all they should be directed to allow.

3. INSTRUCTION *should be based on the evidence.* The jury should not be instructed, in an action of trespass, that they may give punitive damages if they believe, from the evidence, the trespass was committed wantonly or willfully, where there are no circumstances of wantonness or willfulness to warrant such an instruction.

APPEAL from the Circuit Court of Iroquois county; the Hon. N. J. PILLSBURY, Judge, presiding.

Messrs. HOLLAND & AYERS, for the appellants.

Messrs. BLADES, KAY & EVANS, for the appellee.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was an action of trespass, for breaking and entering a close of the plaintiff and taking down a building. The plaintiff recovered, and the defendants appealed.

It appears, from the evidence, that the close in question is a part of a certain tract of twenty-five acres of land; that, on the 13th of August, 1871, Charles Arcenaux, the then owner of the twenty-five acres, executed a warranty deed to one Adams Earl, conveying to him, in trust for himself and three other named persons, an undivided half of the twenty-five acres. At the same time, Arcenaux and Earl executed an agreement, in writing, whereby it was declared that said conveyance was made upon the express condition that the Cincinnati, Lafayette and Chicago Railroad Company (of which Earl was president) should construct the main line of their railroad across the said

tract of twenty-five acres and locate their passenger depot thereon, and that the road should be so constructed and the depot located within six months from that date; and it was thereby agreed between the parties that, so soon as the line of the road should be permanently located over the tract, the tract of land should be platted and laid off into town lots, and they should be equitably divided between the respective parties to the deed, by receiving and taking each alternate lot, or in such other manner as might be mutually agreed upon, and that the deed should be held by a third person named, to await the performance of the conditions. The road was constructed over the land named, in the latter part of September following, and the depot had been located upon it some time previous. The twenty-five acres was platted and laid off into town lots, the certificate of acknowledgment of the plat by Arcenaux and Earl, bearing date October 29, 1872. On the 5th day of April, 1873, Arcenaux executed to Earl a quitclaim deed of a large number of the lots, upon one of which, we understand, the building in question stood.

On the 1st day of October, 1872, Arcenaux executed to the plaintiff in the suit, Ama Marcier, a warranty deed of a portion of the twenty-five acres, describing the same by metes and bounds, upon which her husband, Moses Marcier, placed the building at some time before, as we gather, there having been a bargain for the lot some six months before the deed was executed. The building appears to have been twelve by fourteen feet, one story high, the eaves nine feet from the ground, boarded up and down—not weather-boarded. It was some nine or ten feet from the depot, and kept as a saloon, the family living in it for a time. On the 6th of April, 1874, the whole family left the house, locked it up and moved five miles away into the country on an improved farm of the plaintiff. Some few household articles of insignificant value were left in the building. It appears to have been the intention to return and occupy the building at a future time.

While the building was in this unoccupied condition, in the absence of the plaintiff, the trespass complained of was com·

mitted, by going upon the premises about mid-day, and first taking the ends of the building off, then pushing the sides down and carrying the same across the road. The building was taken down carefully, doing no unnecessary damage to the property. The few household articles were taken into the depot building, and kept for plaintiff.

. It clearly appears, from the evidence, that the plaintiff took her deed from Arcenaux, and made whatever prior contract for the premises she might have done, with full knowledge of the prior rights of Earl and others. The only pretense of any non-compliance with the conditions of the deed to and contract with Earl, so as to justify the making of the deed, which was made to the plaintiff, is that the depot was not located upon the twenty-five acres within the six months, because the depot building was not erected within that time. It is true the depot building was not erected within that time, but the depot had been located there, the ground staked out, a platform built, and the premises actually occupied and used for depot purposes, so far as might be, without having a depot building erected. The condition was not that a depot building should be erected within six months, but only that the depot should be located there within that time. The evidence shows sufficiently that it was so located within the time.

As the evidence was clear and undisputed upon this point, the fourth instruction should not have been given to the jury, upon one hypothesis, among others, that the depot was not located within six months—thus leaving it for the jury to . find whether the erection of a depot building was essential to the condition of the location of the depot within the time specified; and the instruction was further erroneous in directing the jury, if they found for the plaintiff, to allow such damages as they believed, from the evidence. she was entitled to. It should have been such damages as she had sustained. and not have given to the jury the wide latitude of allowing her such damages as they might deem that she was entitled to.

The last instruction for the plaintiff should not have been given, that if the jury found for the plaintiff, and that the

trespasses were committed wantonly or willfully, they might give punitive damages. There were no circumstances of wantonness or willfulness to warrant the giving of such an instruction. The plaintiff had no right of possession, but only actual possession of the premises, and was entitled, under the circumstances, to recover for no more than the actual damage to the building. See *Ill. and St. Louis Railroad and Coal Co.* v. *Cobb. ante.* p. 183.

The evidence showed the value of the building to be about $100; that the damage done to it was not to exceed from $25 to $30; that it would cost that to put it up as good as it was before. The verdict and judgment were for $283.33.

The judgment is reversed and the cause remanded.

*Judgment reversed.*