CHICAGO ANDERSON PRESSED BRICK COMPANY

v.

FRANK SOBKOWIAK.

*Master and Servant—Personal Injuries—Negligence of Master—Con tributory Negligence—Incurring Risk by Master's Direction—Fellow-Servant—Excessive Damages.*

1.    Where a master orders a servant into a place of known danger, if the danger is not absolute or imminent, so that the injury must almost necessarily result from obedience to the order, and the servant obeys the order and is injured, the master can not afterward, in order to shield him-

self from responsibility, be allowed to say that the servant should have disobeyed the order.

2. Instructions submitting to the jury the question whether or not a plaintiff and a defendant's foreman were fellow-servants, although correctly stating the law, should be refused, where the evidence clearly shows that they were not.

3. In the case presented the judgment is reversed, because excessive damages were allowed by the jury; it also appearing that a misleading instruction was given on the subject thereof.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. D. EVANS and FOWLER BROTHERS, for appellant.

There were no relations or conditions between appellee and any other person, that forced him to act against his own judgment, and he thereby put himself in known danger. Plaintiff's every act, as we insist this record discloses, was entirely voluntary upon his part, and with a full knowledge of all the perils surrounding this work. If this be so, then he can not recover. Pennsylvania Co. v. Lynch, 90 Ill. 334; St. Louis & Southwestern Ry. Co. v. Britz, 72 Ill. 261; Clark v. C., B. & Q. R. R. Co., 92 Ill. 43; Camp Point Mfg. Co. v. Ballou, 71 Ill. 418; Simmons v. Chicago & Tomah R. R. Co., 110 Ill. 347; Naylor v. Chicago & Northwestern R. R. Co., 53 Wis. 661; Morey v. Lower Vein Coal Co., 55 Ia. 671; Hughes v. W. & St. P. R. R. Co., 27 Minn. 137; Chi. & N. W. Ry. Co. v. Ward, 61 Ill. 130; Columbus, etc., Ry. Co. v. Troesch, 68 Ill. 546.

"In order to justify plaintiff's conduct under circumstances otherwise questionable, it must appear that it actually proceeded from defendant, or some agent for whose act he was responsible, and even then such advice will not be sufficient excuse if the defendant was clearly not as well aware of the actual danger as the plaintiff was, or if, the advice being given only by an agent of the defendant, under a mere general or implied authority, the circumstances were such that the plaintiff could not reasonably have believed that the defend-

ant intended to authorize the agent's act. *Neither can the plaintiff excuse himself on this ground for taking an unmistakably improper risk,* * * * nor when plaintiff might himself think the question of negligence doubtful." Shearm. & Red. on Neg., Sec. 91; District of Columbia v. McElligott, 117 U. S. 621.

If the act which a servant is ordered to do is obviously dangerous * * * he can not recover. Cassidy v. Maine Central R. R. Co., 76 Maine, 488 ; Kresanowski v. Northern Pacific R. R. Co., 18 Fed. Rep. 229; St., etc., R. R. Co. v. Rosenberry, 45 Ark. 256; see, also, Taylor v. C. & N. W. Ry. Co., N. W. Rep., Vol. II, p. 24; Strohlendorf v. Rosenthal, 30 Wis. 674; Norey v. Lower Vein Coal Co., 55 Iowa, 671; Sullivan v. India Manufacturing Co., 113 Mass. 396; Ladd v. New Bedford R. R. Co., 119 Mass. 413; T. W. & W. R. R. Co. v. Asbury, 84 Ill. 429 ; T. W. & W. R. R. Co. v. Moore, 77 Ill. 217; I. B. & W. R. R. Co. v. Flanigan, 77 Ill. 365; C. R. I. & P. R. R. Co. v. Clark, 11 Ill. App. 104.

By the twelfth refused instruction, and, in fact, by several others that were refused by the court, we sought to submit the question, whether or not this man Keily was a fellow-servant of the other employes, to the jury. It is properly a question of fact and should have been submitted to this jury. I. & St. L. R. R. Co. v. Morgenstern, 106 Ill. 216; C. & E. I. R. R. Co. v. Geary, 110 Ill. 372; Abend v. T. H. & I. R. R. Co., 111 Ill. 202; Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244; C., B. & Q. R. R. Co. v. Bell, 112 Ill. 366; see, also, The Great Western Railroad Co. v. Hawarth, 39 Ill. 346; Chicago & Alton R. R. Co. v. Pennell, 94 Ill. 448.

Messrs. DUNCAN, O'CONNOR & GILBERT, for appellee.

In the case at bar the evidence shows beyond all doubt that Keily was much better informed as to the condition of this bank than the plaintiff, and that, notwithstanding this knowledge, he expressly commanded the plaintiff to incur the danger, and the law is well settled that under such circumstances the jury are authorized to find that the party injured is not guilty of contributory negligence.

Thus, in Pennsylvania Co. v. Lynch, 90 Ill. 334, the first case cited by counsel for appellant, the court say:

" When the defects in the machinery or other appliances are as well known to the servant as to the master, the servant must be regarded as voluntarily incurring the risk resulting from its use, unless the master, by urging on the servant, or coercing him into danger, or in some other way, contributes to his injury." See Wood on Master and Servant, Sec. 178.

For a full discussion of the question, see the exhaustive note to Buzzell v. Laconia Mfg. Co., 77 American Decisions, 222 ; Paterson v. Wallace, 1 Macq. 748; C. & N. W. Ry. Co. v. Bayfield, 37 Mich. 205; Shearman and Redfield on Negligence, Sec. 91 and cases cited, and Sec. 186 ; Bradley v. N. Y. C. R. R. Co., 62 N. Y. 99; Patterson v. P. & C. R. R. Co., 76 Penn. St. 389; L. S. & M. S. Ry. Co. v. Lavalley, 36 Ohio St. 221; Lalor v. C., B. & Q. R. R. Co., 52 Ill. 401.

It is plain that upon the undisputed facts there could be no controversy that Keily was not a fellow-servant of the plaintiff, and the facts being undisputed, the question whether they were fellow-servants was one of law, which it was the right and duty of the court to decide. C. & A. R. R. Co. v. May, 108 Ill. 288; Malone v. Hathaway, 64 N. Y. 5; Corcoran v. Holbrook, 59 N. Y. 517; Shearman & Red. on Neg., 4th Ed., Sec. 226; see also Mitchell v. Robinson, 80 Ind. 281 (41 Am. Rep. 812); Rolling Mill Co. v. Johnson, 114 Ill. 57; Fanter v. Clark, 15 Ill. App. 470.

C. B. SMITH, J.  This was an action in case brought by appellee against appellant to recover for personal injuries received by falling dirt and clay while at work in appellant's clay pit.

The declaration was in case, charging negligence on appellant, and the plea was not guilty.

A trial resulted in a verdict for the plaintiff for $6,000. The court overruled a motion for a new trial and gave judgment on the verdict, to which appellant excepted and brings the record here on appeal, and asks for a reversal, assigning

for errors that the verdict is against the law and the evidence; that the court erred in giving and refusing instructions, and that the damages awarded are excessive. The material facts involved in this suit are substantially these:

Appellant makes pressed brick, in the city of Chicago; it procures its clay at a bank owned and operated by it near the city of La Salle, in La Salle county, Illinois, and transports it thence to Chicago. It had been operating this pit for a number of years; this clay bank lay near the canal, and was operated by digging from the level ground back against the face of the hill or bluff and into it, but keeping all the dirt removed from the top of the ground to the level or bottom of the bank, as the work progressed forward into the body of the hill under which the clay was found.

It appears that the vein of clay being mined was about ten feet in thickness, and this clay was reached and kept uncovered, by allowing the overlying dirt and rubbish to fall or slide down, as the work progressed, forward into the hill. Sometimes this overlying dirt had to be pried, dug or blasted loose before it would fall or slide down to the bottom or floor of the pit, so it could be hauled off out of the way of the workmen and out of the way of the clay. This work had progressed in that way from time to time, in such manner that it seems not to have been regarded as very dangerous by the workmen previous to the time in question. When the clay was uncovered or in reach of the men it was shoveled into carts, which were driven into the mine and thence dumped into canal boats. John Keily was the foreman of this mine, and seems to have had entire charge of it and the men and the work. He employed and discharged the men and paid them. The other officers of the company resided in Chicago, and paid little or no attention to the management or care of this clay bank.

Appellee was employed in February, 1887, by John Keily, as a common laborer to work with others in getting clay out of this bank, and he continued to work there in that capacity until the 2d day of June following, when he was injured; he was perfectly familiar with the work, its method and its haz-

ard. On the day of the accident several carts were hauling clay, among others, one driven by John Keily's son. On the day of the accident it appears that there was quite a large bank of dirt overhanging the pit where the men were at work, and it appeared to be, as it in fact was, a dangerous place for the men to go under to work. At the noon hour the men all left the pit to eat their dinner; at one o'clock they were called to their work by the foreman, John Keily. While the men were at dinner Michael Boyle had exploded a blasting dynamite cartridge in the clay under the overlying dirt, and had loosened and blown out a large amount of clay. After this occurred, at one o'clock Keily called the men to their work, and ordered them to go into the pit and remove the dirt as quick as they could. Boyle, who had just exploded the blast, told Keily that the place was dangerous for the men to work, and that he ought not send them in, but Keily replied to this, that he could get men who would remove the dirt, and that the clay could be removed before the overhanging bank would fall.

The men themselves were also protesting against going in on account of the danger, and quarreling about it, and each seeking a place as far removed from the overhanging bank as he could. But Keily paid no attention to these remonstrances, and ordered the men to go in and get to work and load the carts. Appellee himself swears that he was looking at the overhanging bank, and that he told Mr. Keily that he was afraid to go into the bank for fear it would fall on him, but that Keily paid no attention to his fears, and again ordered him to hurry up and get behind the cart and load the dirt, and told him the bank was not dangerous.

Whalen testified: "The foreman, Keily, told us to go in there; we refused, you know, to go in there, and he told us to go in there; he said there were no pensions here; we told him the place was bad. Some men said the place was dangerous; he said it was all right, to go in there, and he said there were no pensions here, to go in there. That was after dinner; at the time Keily said this the men were three or four feet away; after Keily said that we all went in there

and began to load the cart with clay—Frank (appellee) among them."

Witness Early swears that when he went up on the bank to try to pry the dirt loose before the accident happened, and did not succeed in getting if off, Keily told him to come down and let it alone, that it was safe enough.

Mr. Keily in his own testimony does not deny that he said to appellee there was no danger; nor does he deny that he ordered him into the pit behind the cart to load the clay against his (appellee) protestations.

We think the evidence shows that Keily expressed the opinion that the place was not dangerous.

After appellee had been thus assured by his foreman that there was no danger, and had been two or three times ordered to go into the pit, he obeyed the order and went behind the car and began his work ; but before he had put in his third shovel of clay the bank above gave way, and the dirt came down and caught him, covering him almost entirely up.  He was dug out by his fellow-workmen who had not been caught. When taken out he was insensible.  He suffered a very severe and probably permanent injury.  The bridge of his nose and his cheek bone were broken down.  One of his eyes was seriously injured, and he claims to have also suffered a rupture in consequence of the accident.  His counsel also claims that there is a curvature of the spine as a result of the accident, but we find no proof of that claim in the record.

It is in proof also, that John Keily, the foreman's son, was driving the cart into which the men were loading the dirt when and where appellee was hurt and that his father said to him just before backing his cart into position for the men to load dirt, to look out for danger, and if he, Keily, should call to him to move, to go quickly and get out of the way, and that when the dirt began to fall the boy heard the call of his father and moved his cart out.  It does not appear in proof that this notice was given to any of the other workmen, though most, if not all of them, except appellee, heard it and did get out of the way and escaped injury.

It is first contended by appellant that there can be no recov-

ery in this case, because appellee was fully acquainted with the danger he was in when he entered the bank and that, knowing the danger and hazard of the employment and having voluntarily assumed it, he can not now recover.

We think the evidence shows that the foreman, Keily, expressed the opinion that the place was not dangerous and that he at the same time commanded and required appellee to go in and load the clay, and that but for such assurance of safety and command appellee would not have gone into that place and would not have been hurt; it was in no sense a voluntary and willing exposure on the part of appellee of his person to danger, but he went only after being two or three times peremptorily commanded to go. True he might have disobeyed, but it would in all probability have cost him his place and opportunity to earn a living. In obeying this order he also had a right to rely somewhat on the superior knowledge of the foreman as to the character of the bank and its condition. It was the foreman's duty to be advised about these things and to see that the men were not exposed to unnecessary danger, and to see that the bank was kept reasonably safe for the men to go into.

It is true, as contended by appellant, that the general rule of law is that a servant entering into any kind of employment assumes all the ordinary, usual and known dangers and risks incident to such employment. It is also equally true that the law requires at the hands of employes and servants reasonable care and watchfulness for their own safety in the employment of the master, and that they can not voluntarily, knowingly, rush blindly, carelessly or recklessly into danger and get hurt, and then look to the master for indemnity. But these rules are subject to some limitations and qualifications, and one of them is that the master shall not himself stand by and order his servant by direct command into a place of known danger. If the danger is not absolute or imminent so that injury must almost necessarily result from obedience to the order, and the servant obeys the order and is injured, the master shall not afterward be allowed to say that the servant ought not to have obeyed his orders, in order to shield himself from responsibility.

These principles are recognized in the Pennsylvania Company v. Lynch, 90 Ill. 333, the first case cited by appellant in its argument. Lalor v. C. E. & Q. R. R. Co., 52 Ill. 401; Hawley v. N. C. Railway, 82 N. Y. 370; Woods on Master and Servant, Sec. 178.

We think the proof in this case shows that Keily, the foreman, first assured appellee that there was no danger, and thus quieted his fears, and led him to trust the judgment of his foreman rather than his own, and that he then, by direct command, ordered him to go behind the cart and shovel the dirt. This evidence brings the case within the exception or limitation to the general rule relied upon by appellant which we have above stated.

The second point relied upon by appellant as a complete defense to this suit, is, that Keily, the foreman, and appellee, were fellow-servants, and that for the wrongful act or negligence of Keily resulting in injury to appellee he can not recover.

This question arises upon the refusal of the court to give to the jury the 3d, 4th, 5th, 11th, 12th and 25th instructions relating to the law of fellow-servants, all of which the court refused to give. Conceding that all these instructions are properly drawn and correctly declare the law on that subject, still we think they were correctly refused, because the evidence so clearly shows that Keily and appellee were not fellow-servants, that it would have been improper to submit that question to the jury as a question of fact. We regard the case of C. & A. R. R. Co. v. May, 108 Ill. 288, as conclusive upon that question against appellant. In that case the court use this language : " When a railway company confers authority upon one of its employes to take charge of and control a gang of men in carrying on some particular branch of its business, such employe, in governing and directing the movements of the men under his charge with respect to that branch of business, is the direct representative of the company itself, and all commands given by him within the scope of his authority are in law the commands of the company, and the fact that he may have an immediate superior standing between

him and the company makes no difference in this respect. In exercising this power he does not stand upon the same plane with those under his control; his position is one of superiority; when he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey at the peril of losing their situation, and such commands are, in contemplation of law, the commands of the company, and hence it is held responsible for the consequences."

Testing the case at bar by this rule, what was the attitude of Keily to the men under his care? Clearly that of a master, and not a fellow-servant. He seems to have had entire control of all that part of appellant's business which related to mining and shipping clay. He hired and discharged whom he pleased, and when he pleased, kept their time and paid them, directed when and where they should work, gave them their orders and seems to have required prompt obedience. It would be difficult to find a case where the facts so clearly show a person to have been a master and not a fellow-servant. There was therefore no error in refusing all instructions submitting that question to the jury for the reason that there was no evidence tending to support that view of the case.

Lastly, it is urged this verdict is excessive. We think this complaint is well founded.

While it is true the injuries here were severe and some of them probably permanent, still they did not totally disable appellee from some kind of employment. He informs us that no great while elapsed until he again went to work at lighter work and kept at it at intervals though suffering from his hurt. We are not inclined to think this disability is over half to one-fourth. It is a larger sum of money than the statute allows upon the life of any citizen of the State. It is largely in excess of the very great majority of verdicts rendered for severe personal injuries. The ground upon which the law allows recovery for these injuries is compensation, not speculation; and especially so when there is no wilful or wanton act causing the injury, which would justify the assess-

ment of vindictive or punitive damages. While we can not approve or justify the act of Keily in ordering appellee into the bank, under the circumstances, still we can not see that there was anything wilful or malicious about it, so as to justify the assessment of this large amount of money against this corporation. Under the circumstances in proof we think the verdict grossly excessive, and that passion and sympathy in the jury box had much more to do with the amount of the verdict, than cool, deliberate and impassioned judgment.

We are satisfied the second instruction given for appellee gave the jury what they at least supposed to be a license to go, unrestrained, as deep as they liked in the treasury of appellant, although no such purpose was intended by the court. By this second instruction the court told the jury "that if they found for the plaintiff, then, in assessing his damages, they should take into consideration *all the circumstances surrounding the case*, so far as the same are shown by the proof, such as the circumstances *attending* the injury, loss of time," etc. It is true that this form of instruction has been allowed in Penn. Co. v. Frana, 112 Ill. 398; but it was not approved, and the court declined to reverse the judgment, because it was there said, there was nothing in the evidence to which the instruction could apply that would make the instruction mislead the jury.

But in Heimsotk v. Anderson, 16 Ill. App. 152, Keightlinger v. Egan, 65 Ill. 238, and Waldon v. Mercier, 82 Ill. 550, this form of instruction was condemned and held erroneous, because it was liable to give the jury too much latitude in the assessment of damages. In the case at bar the expression used in the instruction, "*the circumstances attending the injury*," included the language of Keily, the foreman, in telling the men there was no danger in the pit, and in ordering them into it to work. We have seen that this language was not sufficient to justify the assessment of punitive damages, and could not be used to aggravate the injury which appellee suffered; still it was one of the "circumstances" surrounding the injury" that was highly calculated to influence the jury against appellant improperly. This language was wholly

unconnected with the injury itself, and yet was one of the surrounding circumstances.

In all cases where a jury is liable to be led away from its duty by strong appeals to its sympathy for unfortunate litigants, and where the natural tendency of the jury is to favor the poor, unfortunate and weak, the proper grounds for recovery should be clearly defined, with proper limitations, so that the jury may clearly see the real grounds upon which the recovery can be had. The rights of both parties should be carefully guarded upon the question of the measure of damages.

For the errors indicated the judgment is reversed and remanded.

*Reversed and remanded.*