# THE CHICAGO ANDERSON PRESSED BRICK COMPANY

v.

# FRANK SOBKOWIAK.

*Master and Servant—Negligence of Master—Personal Injuries—Contributory Negligence—Province of the Jury—Effect of Order of Defendant's Foreman to Plaintiff to Enter Dangerous Place—Instructions.*

1. Where a servant enters a place of known danger, the dangerous nature of the place being the result of the defendant's method of conducting its business, under the positive command of a foreman, possessing the power to discharge him in case of disobedience, and is injured in such dangerous place, such command of his foreman does not, as matter of law, relieve the plaintiff from the duty of exercising due care on his part; but such command is a circumstance to be considered by the jury in determining the ultimate fact, whether or not, at the time plaintiff received the injury complained of, he was in the exercise of due care.

2. If the apparent danger was so great that a reasonably prudent and careful man would not have continued in the employment, even after receiving the order in question, then the plaintiff assumed the risk and is not entitled to recover.

3. The legal effect of the order was to relieve the plaintiff from taking his own risk of dangers, which he absolutely assumed without the order by continuing in a dangerous employment, knowing it to be dangerous, but it did not relieve him from the exercise of due care under all the circumstances of the case.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of La Salle County; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. FOWLER BROS., for appellant.

Messrs. DUNCAN & GILBERT and O'CONOR, DUNCAN & ECKELS, for appellee.

LACEY, J.   This case was commenced by the appellee against the appellant to recover damages for injuries sustained while in the service of appellant in the work of mining clay. The charge in the declaration is that the appellant negligently

and carelessly maintained and operated its clay pit, so that while the appellee was laboring therein, exercising due care and caution, by means of the negligence of appellant a large quantity of earth in said pit fell upon him, etc., by means whereof the face of the appellee was severely crushed and bruised and he was obliged to lay out large sums of money to effect a cure, was sick and suffered pain and was hindered from transacting his business, etc.

In another count the negligence was charged to be in a negligent order given by John Keily, who stood as the representative of the appellant as foreman, as respected appellee, by which the latter was commanded to work in a certain portion of the pit where he was exposed to great danger of injury, the said Keily knowing the pit to be dangerous and appellee not knowing it to be dangerous, and while exercising due care, by means of which the earth fell on him as before stated.    The third count was in substance the same.

To this declaration there was a plea of not guilty.    Trial and verdict of guilty and appellee's damages were assessed at $6,000, upon which, after overruling a motion for a new trial, the court below rendered judgment, from which judgment this appeal was taken.    This case was in this court on an appeal from a prior judgment at the December term, 1889, and the case will be found reported in 34 Ill. App. 312.

The Chicago Anderson Pressed Brick Company is a corporation which, for several years past, has been engaged in the manufacture of pressed brick at Chicago.    The clay used in this business has been obtained from La Salle, where the company has operated a mine or clay pit under the sole management and direction of one John Keily.    He had complete charge of the work, hired the men, paid them, discharged them, and directed them when, where and how to do their work, and, in fact, in the exercise of his powers as superintendent, he occupied toward them the same position that he would have sustained had he been himself the owner of the business.

This mine or pit is situated along the bluff north of the Chicago, Rock Island and Pacific Railway, between La Salle

and what is known as Split Rock. It contained a vein of clay about ten feet thick, being the bottom vein, called No. 1, above which was another vein of about the same thickness, called No. 2, and above the latter was black dirt, grass, trees, leaves and roots. The method of mining adopted was to loosen by blasting and take out a portion of the lower vein, load it upon carts, and thence upon canal boats, and then pry off or blast out the other vein, which was worthless, and the dirt above, upon the removal of which another portion of the lower vein was taken out in the same way. All this was done under the personal direction and supervision of Keily.

The plaintiff, Sobkowiak, commenced working for the defendant at this mine or pit in the month of February, 1887, and continued to work there until the 2d day of June of that year, when he received the injuries on account of which this suit was brought. As his name sufficiently indicates, he is a Pole. His work was that of a common laborer, and consisted in loading the loose clay into carts to be thence put into canal boats. On the day on which the accident occurred the evidence tends to show the pit was in a dangerous condition, by reason of a quantity of overhanging earth which was likely to fall and which had been in the same condition the day previous, when one of the men, Early, had gone up and tried to pry it off, but before he had time to do so he was called down by Keily who told him he had nothing to do with that work, but that he should attend to his cart. He then called Keily's attention to the condition of the bank, and told him it was not safe for man or horse to go under it, and when Keily wanted him to drive under it he refused to do so.

During the forenoon of the 2d of June, the men worked at the pit, while it was in the condition above indicated. At noon they stopped work for an hour to eat their dinners, which they did at a point about 100 feet from the pit. While the rest were eating dinner, one of the workmen, Boyle, under the direction of Keily, fired off a blast, which threw out considerable clay, probably leaving the bank overhanging still worse than it was before. After it went off Keily came up, and he and Boyle both went to examine the place, Keily at

the same time calling the men to go to work, it being then one o'clock. Boyle states he then told Keily that the place wasn't safe to put men into, and that he had better have the dirt taken down before the men would go in, to which Keily replied that he would get plenty of men, that he wanted to get that clay taken out before the surface would fall. This, however, is contradicted by Keily and others. According to the testimony of appellee, which is, however, contradicted by that of Keily and others, when Keily sent him to go behind the cart he said to Keily " When the bank is coming down, many a man will be killed," and Keily replied, " No, Frank, that bank is all right; go behind the cart and load the cart; hurry up." Then the witness testified, he began to shovel, but " was very anxious about it." After he had shoveled three shovelfuls the bank came down, and he was caught, and the injury resulted.

The witness appellee testified that at the time he went into the pit to shovel, the bank was all open and was too far overhanging him. The process of mining the day of the injury was the same that it had been theretofore. The appellee further testified that, at the time he went in to shovel clay, he " did not believe that it would come down so very soon, but it was plainly to be seen that it would come down—that it would come down in an hour or two. * * * I did believe it would come, but how soon I did not think and nobody would think how soon it would come." He could not tell whether it would come down before he got the clay shoveled or not and he replied to a question " every human being could see that it (the bank) would come, but when it would come nobody could tell, and so supposed when he went into the bank to work."

This was about the state of the evidence so far as it bears on the circumstances surrounding the injury, and the facts concerning the cause thereof. The appellant complains of the giving of appellee's first instruction among others and the refusal to give its 17th, 21st and 24th refused instructions as asked and in the modification of the same and giving them as modified. The instructions in question are as follows, viz., on the part of the plaintiff:

1. "If the jury believe from the evidence that the clay pit in question, at the time in question, was unsafe and dangerous for men to enter and work in, and that to enter and work therein, in its then condition, was not one of the ordinary and usual hazards of the employment in which the plaintiff was then engaged; yet, although the jury believe from the evidence that the plaintiff had knowledge that the clay pit in question was not in safe condition to enter and work in, but did not know that the same was inevitably and necessarily dangerous; if they further believe from the evidence that Keily was the representative of the defendant, and had the authority to employ and discharge the men at work, and direct and control such men in the conduct of the work, and that Keily at and before the time in question knew that such clay pit was then unsafe and dangerous for the men to enter and work in, and that Keily then and there instructed the men that such work was not unsafe, and ordered the plaintiff and his fellow-workmen to enter and load up the carts; and if the jury further believe from the evidence that plaintiff relied upon the expressed judgment of Keily as to the condition of the work, and that so relying he entered said pit in obedience to the orders of Keily, and then and there received the injuries complained of, the plaintiff is entitled to recover." (Given.)

17. "The court further instructs the jury on the part of the defendant that the mere fact that a portion of the overhanging surface fell to the base or floor of defendant's clay pit or mine and that by reason thereof resulted the injuries complained of to the plaintiff, is not sufficient to authorize a recovery in this case. *But the jury must further believe from the evidence that the falling of such overhanging portion, and the injuries to plaintiff, were the result of the negligence, or want of ordinary care of the defendant.*"

21. "The court further instructs the jury on the part of the defendant that even though they believe from the evidence that the witness Keily told the plaintiff to go into the clay pit or mine of the defendant at the point at which the accident occurred and assist in loading the clay theretofore

loosened into the carts of the defendant, still, if the plaintiff knew at the time he was so told that the said mine or clay pit was in an unsafe condition and that it was dangerous to go into it at said point and assist in loading said cart, he would not be entitled to recover from the defendant for the injuries so received by him, if any, by reason of the falling of a portion of the overhanging surface of the said mine or clay pit, and the jury will find for the defendant, *unless the plaintiff, though knowing there was danger, did not know it was inevitable, objected to going into the pit to his superior on account of the danger, and went in on the order of his superior having power to discharge him notwithstanding such objection.*" (Given.)

24.  " The court further instructs the jury on the part of the defendant, that no man has a right, voluntarily, to place himself in a position of danger, and that if he does so knowingly *and voluntarily* and receives injuries while in such place of danger, he can not recover therefor; and in this case, even if the plaintiff shows that the clay bank where the plaintiff met with his accident was dangerous and unsafe, and even if the evidence further shows that the defendant was negligent in its care of said bank, still, if the evidence shows that, with knowledge of such facts, the plaintiff continued to work in said clay pit at the base of said clay bank, with such knowledge on his part, then, in such case, he assumed all risks arising therefrom, and can not recover in this case for injuries thus received.  *But, although the jury believe from the evidence that the plaintiff had knowledge that there was danger, but did not know the danger was inevitable; yet, if they further believe from the evidence, that the plaintiff objected on account of the danger to Keily, the defendant's agent, who superintended the work and who had power to discharge plaintiff, and that Keily, notwithstanding such objection, expressly ordered plaintiff to go to work, then, in such case, plaintiff's knowledge of the danger would not prevent his recovery.*  (Given.)

The above instructions and modifications involve principles of law which, to some extent, perhaps, have not been directly

passed on by the Supreme Court in this State, but have in substance been considered by this court in the case of the Moline Plow Co. v. Anderson, 19 Ill. App. 417, which we will refer to hereafter. It is not disputed, nor can it be by counsel for appellee, that the law is, as between master and servant, that " if a servant knowing the hazard of his employment as the business is conducted, is injured while engaged therein, he can not maintain an action against the master for the injury, merely, on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury." This principle was fully recognized in a case similar in its facts to this, except the alleged order of the superior to the servant to enter into a certain dangerous part of the work. We refer to the case of Simmons v. Chicago & Toma R. R. Co., 110 Ill. 347.

It may, therefore, be asserted in applying this principle of the law to the facts of this case, that, appellee, aside from the alleged order, could have no standing in court to recover for anything, because he well understood the manner of mining the clay, and took all risk of injury necessarily resulting from such mode. The giving there of the alleged order by Keily, the superintendent of the work, to appellee to go in under the bank to shovel clay and the rights and obligations of appellee in consequence, become the particular matters of consideration in this case. The rule of law above referred to has its exceptions, no doubt, and one is as illustrated by the case at bar, that, although the servant accepts a dangerous employment, knowing it to be dangerous, and remains therein without objection, he takes all the risk pertaining thereto; yet, if he is called upon suddenly, without time for reflection, to perform some dangerous act in course of his employment and objects to its performance, and on account of such danger, but is yet ordered by his superior to go ahead notwithstanding and perform it, he is relieved to some extent from the operation of the rule in case he obeys and is injured in consequence. The extent of this relief is the question we have particularly in hand and with which we must now deal.

Instruction No. 1, given for appellee, announced as a rule of law that he was not required to disobey the order of his superior, to go into the clay pit, unless he knew that to obey it was inevitably and *necessarily* dangerous, although he had knowledge that the clay pit in question was not in a safe condition to enter into and work.    We think this instruction was erroneous.    Besides, being of uncertain and doubtful meaning, we think it invaded the province of the jury.    Does the expression "*inevitably* and necessarily dangerous," mean that the accident shall surely happen in case the command was obeyed?    If so, we think it too strong.    The danger might have been so imminent that no prudent or careful person would have executed the order even though it were *not* absolutely certain that the clay bank would fall if he ventured under it.    If the word inevitable refers to the danger, *i. e.,* that it must be inevitably *dangerous* to go under the bank, then we conceive it does not describe the degree of danger at all.    A thing may be said to be certainly dangerous and yet the degree of danger may not be very great.

The expressions contained in the instruction are confusing and misleading, and, in our judgment, an attempt to lay down as a rule of law what is only a question of fact for the jury. The declaration in all the counts charge, that at the time the injury was received the appellee was in the exercise of ordinary and reasonable care.    This was one of the important and ultimate facts which the jury had to determine.    We use the word *ultimate* in contradistinction from the word evidentiary, and mean by this, as our Supreme Court has held, that the question of negligence is a question of fact, in order to determine which the jury have to consider and pass on all the evidentiary facts and circumstances in the case.    The order of Keily, if given as claimed, was a most important fact, and according to law had one important function and that was to relieve the appellee from taking his own risk of danger which he absolutely assumed without the order by continuing in a dangerous employment knowing it to be dangerous; but in our judgment it did not relieve him from the use of ordinary care under all the circumstances of the case.    The order was,

Chicago Anderson Pressed Brick Co. v. Sobkowiak.

however, an important circumstance to be considered by the jury in arriving at its conclusion as to whether appellee was or was not in the exercise of ordinary care. The term ordinary or reasonable care in this State is a legal term and implies that one to be in its exercise does that which, under the circumstances attending, a reasonably prudent person would do. It is a variable term and may, according to the circumstances, require a high degree of care or a low degree, as these terms are used in an absolute sense, yet all the time it is such care as a reasonably prudent person would exercise under the circumstances. When this is clearly understood many perplexities which have crept into the law books and decisions of the courts from confounding of terms will be obviated. It would seem futile for courts to undertake to lay down a rule of law and define accurately *how* dangerous a proposed action would have to be before a servant receiving an order from his master to perform it, would be required to disobey under penalty of taking his own risk. And the difficulty is forcibly illustrated by the very terms used in the instruction which only import at°best that the proposed act must be quite dangerous, very dangerous or imminently dangerous. No safe and clear standard could be laid down by terms like those used in the instruction. The court should have fixed the ordinary standard of care debarring recovery in case the danger, even after receiving the order, and under all the circumstances, was apparently so great that no reasonably prudent man would have obeyed it.

In the first years of the jurisprudence of our State the Supreme Court occasionally confounded what was matter of fact for a jury with matters of law. One example may be noted. It was often held that in case of injury received by one crossing a railroad track by being run over by the engine, he must, while approaching the crossing, stop and look up and down the railroad track to see if any train approached and in case of failure it was held he was negligent and could not recover if injured by an approaching train. In course of time it was found that it was impracticable to apply such a rule to the varying facts of all cases and that there were many circum-

stances that ought to excuse a man from such a requirement. The attempt to formulate this into a rule of law was abandoned and many other like attempts.   It was discovered that no general rule could be laid down and that it was really a matter of fact for the jury and not a matter of law for the court.   And we understand now that the general rule is that negligence is a matter of fact for the jury and not a question of law for the court, governed, however, by this only standard, that negligence is the failure to do what, under all the circumstances of the particular case, a reasonably prudent person would do for his own welfare or safety.   This rule is also modified in case of minors who are only required to exercise such care as children of their age and discretion would exercise in the given case.   Governed by this plain and simple rule of law all else is matter of fact for the jury.   This court is authorized to pass upon matters of fact as well as of law. But first it is our duty to see that the law is properly laid down by the court below to the jury and prevent any invasion of the province of the jury by the lower court.   The question for the jury in regard to the negligence of appellee in obeying the order was : Did appellee under all the circumstances in the case, as shown by the evidence, including the order of Keily, if any, exercise that care and discretion in going under the overhanging clay to work, use that care and discretion, that an ordinarily prudent and careful person would do ?   In Moline Plow Co. v. Anderson, 19 Ill. App. 417, we held to the same rule, though in that case the rule is not so fully explained as here.

The modification by the court of the 21st and 24th of appellant's modified instructions which are above copied and which appear in *italics* is an attempt by the court to announce the same rule which we have been discussing, contained in the 1st of appellee's instructions.   With this modification it was error to give those instructions as modified.

The instructions as offered and modified should have been refused for the reasons we have explained.

The rule as announced in the 21st of appellant's instructions as offered, in regard to the knowledge of the danger by appel-

lee if he went under the clay bank to shovel, does not give
the degree of danger to be known to appellee broad .enough
and as we have just announced the rule.   The 24th instruc-
tion, as offered by appellant, ignores the supposed order of
Keily altogether, and should have been refused.   The instruc-
tion given for appellee, No. 1, seems to find support to some
extent in Shearman & Redfield on Negligence, Sec. 186, though
the words "inevitably and necessarily dangerous" are not the
same as used in the text named which are inevitably or immedi-
ately dangerous.

We do not base our objections to the instruction on this
difference, though "*immediately*" is a much more definite
term.   It is stated in the text above quoted that the rule there
announced is held in the State of New York, Pennsylvania, and
other States.   This may be, but the rule is not of universal appli-
cation and we do not think it comports with the rules of prac-
tice in this State where the jury is the sole judges of the
facts of the case; nor do we think it is so plain and easily
understood as the rule held in this State.

We will next consider the modification by the court of
appellant's 17th instruction and the giving of it as modified.
The instruction as offered should have been refused as not
giving any definite idea of the case.   No one contended that
the mere fact that the appellee was injured by the falling of
the clay was cause for recovery, and the instruction as offered
was only calculated to mystify and befog the jury.   But the
modification was as follows : "But the jury must further
believe from the evidence that the falling of such overhang-
ing portion and the injuries to the plaintiff were the result of
the negligence or want of ordinary care of the defendant."

This seems to be an attempt by the court to state an entire
cause of action in favor of appellee, but it fails to include the
hypothesis of the exercise of any care on his part.

It allowed recovery without requiring any care on his part.
In this the modification and the instruction as modified was
error committed against appellant.   We see no other errors
in refusing or in modifying any other of appellant's instruc-
tions.   Nor do we find any other error in giving any other

of appellee's instructions. When the case was here on a former appeal (34 Ill. App. 312), we expressed the opinion that the verdict and judgment were excessive.

The facts at the last trial were not much different from what they were when the case was here before, though somewhat more favorable to appellee. We, however, are of the opinion that the verdict is, under the evidence, still excessive and largely out of proportion to verdicts ordinarily recovered and sustained by the courts in cases similar to this, and more, in fact, than it ought to be.

For the reasons above given the judgment of the court is reversed and the cause remanded.

*Reversed and remanded.*