# THE CHICAGO, WILMINGTON & VERMILLION COAL COMPANY

## V.

## FRANK O. PETERSON.

*Master and Servant—Negligence of Mine Owner—Failure to Supply Props—Laws of 1887, Secs. 14 and 16, Page 235—Evidence—Contributory Negligence—Instructions—Practice.*

1.   A judgment of a trial court may be reversed *pro forma* on account of the failure of an appellee to file briefs herein.

2.   Gross negligence is the want of ordinary care; what constitutes ordinary care varies with the circumstances of each case; one must act under all circumstances as a reasonably prudent person should act.

3.   It is against public policy to allow the provisions of a statute touching the care an employer must exercise with regard to the protection of his employes from personal injury, to be dispensed with by contract.

4.   An employe injured through the negligence of his master may release him from liability therefor upon receipt of a sum agreed upon.

5.   In the case presented, this court holds, in view of the evidence, that under the statute it was sufficient for the plaintiff to notify the " mine car driver " that props were necessary in the room where he was at work; that the release in question was understandingly executed and delivered by the plaintiff to the defendant, and that in view thereof the judgment in his favor can not stand.

[Opinion filed May 21, 1891.]

APPEAL from the Circuit Court of Bureau County; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. GEORGE S. HOUSE and ECHELER & KYLE, for appellant.

No appearance for appellee.

UPTON, J.   In October, 1889, and prior thereto, appellant was the owner of a coal mine in Seatonville in Bureau County, and engaged in operating the same, and employed

appellee therein as a "loader" under a contract which was reduced to writing.

The mine was operated by what is known as "long-wall work," all the coal being taken out as the work progressed.

Roadways were maintained at the base of the mine, from the elevated shaft to the coal face, and deflecting therefrom entries and branches were made, denominated "rooms." These "roadways," "entries" and "rooms," as the work progressed, required "building up" on the sides, and props with caps to sustain the roof. The "building up" was done in the night time principally, by the appellant's servants, and consisted in building or erecting a wall of stone or other solid material from the base to the roof of the mine, about three feet from the coal face, and filling in the back with dirt or other material to support the sides and roof from caving or falling in. At the time in question the mine was in part operated by mining machines which cut and removed the earth or other material from under the coal face, and between it and the "building," about four feet in depth, extending back from under the coal face some distance, that the pressure from above the coal bed might aid in breaking it down for removal.

This being done, holes were drilled into the coal face, and the coal loosened by powder blasts, so that it could be pulled down by the "loaders," placed upon the "pit cars," taken to the shaft and elevated. As the coal is taken down and removed the space between the "building" and the "coal face" increased, and it became the duty of the "loader" to secure the roof from falling by props as before stated.

It was the duty of appellant to deliver to appellee the props and cap-pieces as the same should be required, with the "miners' empty car," so that the appellee as such workman or "loader" might at all times be able to properly secure said workings for his own safety, while so engaged, and for any wilful failure so to do would be liable in damages for any direct injuries by appellee sustained arising from such neglect. Session Laws, 1887, title "Mines and Miners," page 235, Secs. 14 and 16.

On the morning of the 22d of October, 1889, appellee and his associate "loader," commonly called a "butty," went into the mine and commenced work as "loaders" where they were put at work by the pit boss of the appellant. Appellee thought the roof of the mine on the left of the room in which they were put at work required propping and commenced to prop the roof on that side as they progressed in taking out the coal, until they had used all the props. About nine or ten o'clock in the morning of that day appellee and his co-worker or "butty" both called to the driver of the "miners' empty car" to bring in more props and caps. This request was repeated many times during the day and before the injury complained of occurred, but none were brought them, though the "empty miners' cars" were driven in to them to be loaded every fifteen or thirty minutes.

At about four o'clock in the afternoon of that day and while so engaged as a "loader" in said mine, the roof on the left side of the room in which he was put at work caved in, for want of being sufficiently propped; a quantity of rock, coal and earth fell upon appellee, causing the injury complained of and for which this suit was brought. Appellee alleges that this result and consequent damage to him was occasioned by the wilful failure of appellant to comply with the provisions of Sec. 16 of the act above referred to. The action was in case, plea the general issue, trial had with jury in the Circuit Court, which resulted in a verdict for the appellee, upon which, after overruling a motion for a new trial, judgment was rendered, to which appellant excepted, and appealed to this court, and it is here insisted by appellant's counsel that the trial court erred.

1st.   In giving, refusing and modifying instructions.

2d.   In refusing to allow appellant to give the written contract with appellee to labor in the mine, in evidence.

3d.   Appellee's receipt and release put in evidence by appellant barred appellee's right of recovery.

4th.   In denying appellant's motion for a new trial.

We have not been favored with briefs or suggestions by the appellee or his counsel. Under the rules of this court the

judgment of the Circuit Court might be reversed *pro forma* and without further examination, for appellee's failure to file briefs in the case, but under the circumstances we deem it proper to determine the case upon its merits. Asher v. Mitchell, 7 Ill. App. 127.

First. We think the trial court erred in giving to the jury appellant's instructions numbered one, two, three and four.

In our judgment they were each and all vicious, as offered, and in no manner aided by the attempted qualification or amendment of the trial court, connecting the evidence established; that on the day of the injury, and before its occurrence, the appellee determined from examination that more props were needed or required to render the roof of the mine in which he was put at work perfectly safe, and that appellee demanded and requested them of the " empty car driver," whose duty it was to deliver to appellee props for that purpose, and that notwithstanding the props were not delivered to him, as requested, appellee still continued to work in the mines; that alone might be regarded as negligence *per se* sufficient to defeat a recovery as stated in the instructions. Appellee might have required the props out of excessive or over-abundant caution, and not actual necessity, as measured by ordinary care. Appellee was only bound to use ordinary care, and the law as laid down in the commencement of the appellant's first instruction is correct; but as amplified and sought to be applied to the case at bar in its subsequent parts in the appellant's instructions numbers two, three and four, we regard it as misleading, and not a correct statement of the law.

In our opinion the attempted modification of the instructions above referred to was useless, and the last part of the modification misleading. Gross negligence is now regarded in this State simply as the want of the use of ordinary care. Ordinary care is all that is required, but this is required in all cases. In some cases more caution is required to avoid an injury than in others, because of the variant circumstances and the different situations under which the injury may occur. In the case at bar if the appellee was waiting for props

to sustain the roof of the mine, the delivery of which was required by statute to be made to appellee by appellant, through its servants, "empty car drivers," appellee might have been justified in continuing work (notwithstanding there was apprehended danger) for a reasonable length of time after a demand made therefor, expecting that the props would be delivered to him, when under other circumstances reasonable care would have required him to desist at once from working. One must act under all circumstances as a reasonably prudent person would act, which is denominated reasonable or ordinary care. Chicago Anderson Pressed Brick Co. v. John Sobkowiak, 38 Ill. App. 531.

In the case at bar, the doctrine of comparative negligence had no place, and in that view the instructions as amended were in our judgment erroneous and misleading.

We think under the present statute (*supra*) that appellant's fifth and seventh instructions were erroneous and should have been refused. These instructions were not aided by the modification, which was only another name or form of expression for the want of the use of ordinary care as above stated.

Second.   We are of the opinion that under the statute (*supra*) it was sufficient for the appellee to notify the " mine car driver" that props were wanted for use in the room where appellee was at labor. We also think that the trial court committed no error in refusing to admit the written contract for labor in the mine, between appellee and appellant, to be read in evidence to the jury. The law of the case is controlled by the statute, and in our judgment it would be against public policy to allow its provisions to be dispensed with by any contract between the parties.

Third.   On the trial in the court below the appellant offered in evidence the following release and receipt, which was read to the jury, viz.:

SEATONVILLE, ILL., Dec. 28, 1889.

"Received of the Chicago, Wilmington and Vermillion Coal Company, the sum of fifty (50) dollars, the same being received by me as satisfaction in full of all demands and

charges of every kind and character by me held at this time against said company, expressly releasing any and all claims for damages I may have, if I have any against said company by reason of an injury by me received on the 22d day of October, 1889, in said company's mine, at Seatonville.   Witness my hand and seal this 28th day of December, 1889.

(Signed)      "F. O. PETERSON.      [Seal.]

"Subscribed in presence of

"GUS BUCKLAND, witness.

"BEERS, witness."

That this contract of release of appellant from all claims for any and all damages sustained by the appellee in consequence of the injuries complained of, in the suit at bar, for and in consideration of the sum of $50, paid appellee at the time of its execution, if the execution and delivery thereof was not procured through fraud, misrepresentation or deceit of appellants or its agents, should be held to preclude and bar appellee from a recovery in this suit, none can dispute.

It is conceded that the release was read over and explained to the appellee before its execution and delivery to appellant and that appellant denied all liability for any damages in consequence of the injuries received by appellee, claiming and insisting that such injuries were caused by appellee's own negligence and want of ordinary care.   That at the time of the execution of the release, appellee insisted that inasmuch as it had been customary at the mine when any of the miners were injured for a collection to be taken up for the injured person, the last of which collection so taken up amounted to $53, to which appellee claimed he had contributed, and because the operators there at the mine were not at work, he thought appellant ought to help him some.   The only objection, as we understand, which appellee or his counsel make or interpose to the efficiency of the release as a bar to this suit, is that appellee did not understand it.   We think the great weight of the evidence upon that point is, that the release was understandingly executed and delivered to the appellant.

Appellee nowhere claims that he did not understand the

English language, which, as appears by the record before us, he did. He gave his evidence in the English language, signed his name to the release and manifestly understood the transaction of business in English, and the release was fully read to him, as he admits in his evidence, and explained particularly, as shown by the three or four other persons who were present at the time of its execution and delivery. If appellee did not then understand it, it was his own negligence and he can not now be heard to complain.

We think the trial court erred in not allowing appellant's motion for a new trial, and for the reasons above stated the judgment of the Circuit Court is reversed and the cause remanded for further proceedings not inconsistent with the views herein before expressed.

*Reversed and remanded.*