WILLIAM R. GARRISON v. C., H. & D. RY. CO. ET AL.

1. The rule of public policy declaring invalid contracts whereby an employer undertakes to exempt himself from liability to his employe for negligence, is not confined to cases where a railroad company is the employer, but extends to the relation of employer and employe generally.

2. A contract whereby an express company stipulates for immunity from its wrongful negligence, is within the inhibition of the rule that parties can not by contract take away the jurisdiction of the courts.

HOSEA, J.

Demurrer to second defense of United States Express Co.

To the petition setting up personal injuries received through the joint and co-operating negligence of both defendants, the United States Express Company avers, in its own behalf, as a second defense, that, at the time of entering into its employment, and as a condition and consideration of its so employing him, the plaintiff entered into a contract with the company agreeing to assume the risks for all expenses and injuries whether caused by negligence or otherwise, and to indemnify it against all claims for recovery on his own part, for injuries to him, and to pay over to it any sum which it might be compelled to pay in consequence of any such claim.

The demurrer filed to said defense as insufficient in law,

raises the question of the validity of such contract—whether an employer can, by contract with an employe, avoid his liability for injuries resulting from negligence in respect of duties required by law of the employer.

The pleadings here show that the contract was made and was to be performed in Ohio, and that the injury happened here. The question, therefore, is to be determined by the law of Ohio.

It is conceded that the case of *Railway* v. *Spangler,* 44 Ohio St., 471, 478, holding such contracts to be invalid, settles the law in Ohio as to contracts of railway employes, but it is contended that the rule and the public policy invoked, are confined to railway employment. In *Railway* v. *Spangler, supra,* the court, after commenting on *Little Miami Ry.* v. *Stevens,* 20 Ohio, 415, and *Clev., C. & C. Ry.* v. *Keary,* 3 Ohio St., 201, says:

"The doctrine established by these cases has remained unquestioned by this court for more than thirty years. It furnishes a conclusive answer to the contention of the company that the stipulation which it seeks to enforce would better protect the public by promoting the greater diligence on the part of the brakemen and the consequent safety of passengers and merchandise in transit.

"* * * It is the firmly established policy of our law that such liability should attach. * * * The policy of our law being well settled, it only remains for us to inquire whether railroad companies may ignore or contravene that policy by private contract with their employes, stipulating that they shall not be held to a liability for the negligence of their servants which public policy demands should attach to them. The answer is obvious. Such liability is not created for the protection of employes simply, but has its reason and foundation in a public necessity and policy which should not be asked to yield or surrender to mere private interests and agreements."

While it is true that the cases cited by the court are those of railway employes, yet from the language quoted it is fairly to be inferred that the court had in mind a principle

of broader application, and that the facts before it in this regard were significant only of the occasion of its application.

The principle is affirmed in later cases wherein contracts relating to membership in railway relief associations are distinguished and upheld; but the right of the employe to refuse to receive the benefits, and sue upon his common-law privilege, is made the criterion of validity. *P., C., C. & St. L. Ry.* v. *Cox,* 55 Ohio St., 497; *State* v. *Railway,* 68 Ohio St., 9, 36.

But the rule of public policy in question is not confined, in Ohio, to cases arising in railway employment. In a case involving the relations of a miner and the owner of the mine, reported in *Coal & Mining Co.* v. *Clay,* 51 Ohio St., 542, the court, on page 556, cites *Railway* v. *Spangler, supra,* in terms of a general, and not a limited, application to the relations of master and servant, quoting the same passage given above, and continuing as follows:

"If the principle in this" (the Spangler) "case has application to the one at bar, *and no reason is perceived why it does not,* it would seem to follow that the custom set up in the petition ought not to be held to have absolved the deceased from the obligation enjoined by the statute."

But again, in order that the principle should be rested upon a fixed and unmistakable foundation, as one of broad and general application, and that no misconception should arise from the accident of the more frequent occasion for its application in railway cases, our Supreme Court has declared its basis to be the Constitution of the state. In *Balt. & O. Ry.* v. *Stankard,* 56 Ohio St., 224, the court says, pages 231-2:

"A long line of decisions hold that parties can not by contract take away the jurisdiction of the courts in such cases. (Citing authorities.)

"While courts usually base their decisions upon the ground that parties can not, by contract, in advance oust the courts of their jurisdiction of actions, a more satisfactory ground is, that under our Constitution all courts are open, and every person, for an injury done him in his land,

goods, person, or reputation, shall have remedy by due course of law. Section 16, Article I.

"Courts are created by virtue of the Constitution, and inhere in our body politic as a necessary part of our system of government, and it is not competent for any one, by contract or otherwise, to deprive himself of their protection. The right to appeal to the courts for the redress of wrongs, is one of those rights which is in its nature under our Constitution, inalienable, and can not be thrown off, or bargained away."

See also *Myers* v. *Jenkins,* 63 Ohio St., 101, 102, seventh syllabus.

The general rule that employers can not stipulate for immunity from their own wrongful negligence; and that a contract between employer and employe in consideration of employment and the compensation to be paid, whereby the employe assumes all risk from any cause while in service, and exempts the employer from liability therefor, is void, as against public policy, is sustained by many authorities elsewhere. *Chicago, W. & V. Coal Co.* v. *Peterson,* 39 Ill. App., 114; *Maney* v. *Railway,* 49 Ill. App., 105; *Louisville Bagging Co.* v. *Dolan,* 13 Ky. Law, 493; *Blanton* v. *Dold,* 109 Mo., 64 (18 S. W. Rep., 1149); *Runt* v. *Herring,* 2 Misc., 105 (21 N. Y. Supp., 244); *Bonner* v. *Bean,* 80 Tex., 152 (15 S. W. Rep., 798.)

The general principle declaring illegal contracts for rebates on shipments by common carriers, has been applied and enforced by the Supreme Court of the United States in *Union Pac. Ry.* v. *Goodridge,* 149 U. S., 680 (13 Sup. Ct. Rep., 970; 37 L. Ed., 896). The same is held in Ohio cases, where the statutory provisions on the subject are said to be but declaratory of the common law. In *Balt. & O. Ry.* v. *Coal Co.,* 61 Ohio St., 242, Judge Shauck, on page 252, quoting from an opinion by Justice Swayne, says:

" 'Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the ·

objection would be tainted with the vice of the original contract, and void for the same reasons.' "

It must be admitted that some federal courts, notably the Supreme Court of the United States, in the case of *Balt. & O. S. W. Ry.* v. *Voigt*, 176 U. S., 498 (20 Sup. Ct. Rep., 385; 44 L. Ed., 560), have adopted the view contended for by the defendant, sustaining contracts of this nature, except in railway cases, and limiting the rule of public policy strictly thereto, as an exception, based on the public interests involved, to the fundamental right of individuals to contract. But the question as it arises here, presents a subject-matter strictly within the general police powers of the state; and however unfortunate may be the conflict of opinion, the duty of the courts in Ohio is to accept and enforce the law of the state as declared by its own highest tribunal. It would not be seemly to suggest a criticism of the reasoning upon which the federal tribunals rest their determination; but it may not be improper to note that the broad right of contract is curbed in many directions which all courts concede as proper, in matters conserving mere property rights, while cases like the present, relate to the safety and even the life of the citizen.

For reasons given, the demurrer must be sustained and it is so ordered.

Demurrer sustained.

*Robert S. Fulton*, for plaintiff.
*Harmon, Colston, Goldsmith & Hoadly*, for defendant.