## Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. George W. Beard.

1. NEGLIGENCE—*Failure to Look and Listen Before Crossing a Railroad.*—The failure to look and listen before attempting to cross a railroad crossing is not negligence as a matter of law.

2. SAME—*Proof of Failure of Railroad Company to Give Signals.*—On a charge of negligence in a railroad company in failing to give the statutory signals on approaching a highway crossing, it is competent to permit witnesses to testify that if the signals had been given they would have heard them.

3. INSTRUCTIONS—*Singling Out One Fact.*—An instruction which singles out one fact in evidence which is not a controlling fact, and calls the attention of the jury to it, is properly refused.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Wabash County; the Hon. ENOCH E. NEWLIN, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed March 2, 1903.

C. S. CONGER, attorney for appellant.

LANDES & KOLB, attorneys for appellee.

Mr. Justice Worthington delivered the opinion of the court.

Appellee recovered judgment for $1,500 for injuries received through the collision, on a highway crossing, of appellant's locomotive, drawing a passenger train, with a wagon which appellee was driving. It occurred about 6:45 p. m., January 26, 1901. The case was tried upon the first, second and fifth counts of the declaration.

The first count charged failure to ring the bell or sound the whistle; the second, that the servants of appellant were in full view of the crossing long enough to have seen appellee approaching it, and failed to give warning; the fifth, that the train was so carelessly and improperly managed that through this negligence, appellee was struck, etc.

Appellee was returning home from Mt. Carmel; driving a team of horses hitched to a show ticket wagon. This wagon was inclosed on all sides, but had a window in front twenty by twenty-four inches, and windows in the doors on each side fourteen by twenty inches. On the left side, the doors did not close at the bottom by twelve inches, this space narrowing to the top. The crossing was about five feet above the surface of the ground, and the top of the rails about four inches above the surface of the track, having been recently put in and the crossing not planked. Heavy teaming had deepened the space between the rails. Patton station is five miles north of Mt. Carmel, and Patton crossing, where the collision occurred, is a quarter of a mile north of Patton station. The Stillwater crossing a half-mile further north. From Patton station to Patton crossing, the highway is west of, and adjacent to the right of way, until it turns east to make the crossing. The track north from Patton station is straight for three miles. The view of the track to one traveling from Patton station to the crossing is obstructed to some extent by trees, shrubbery, lumber, etc., on appellant's right of way, but at places is uninterrupted. At the turn to make the crossing, the view is also somewhat obscured, but within forty feet of the crossing, it

appears, from the trend of the evidence, to be clear. The night was cloudy and dark, the moon being obscured. The train was five minutes late, running on a straight down grade, with steam shut off, at about twenty-five miles an hour. Appellee lived in the vicinity of the crossing, and knew its condition. The locomotive had a bright head-light, and there was a switch light about 480 feet south of the crossing.

A number of witnesses, who were in the vicinity, testify that they heard no signals given for the crossing, and that there was nothing to prevent them from hearing. About the same number testify that they did hear signals. The engineer and fireman say that they were given. A pas-senger on the train, who testifies that he gave attention to this matter, and states why he did so, testifies positively that they were not given. From this conflicting evidence, the finding of the jury that they were not given, if the jury did so find, should not be disturbed.

The crucial test of the verdict is, was appellee exercising due care and caution, when he attempted to cross the track? That the view of the track to one driving north from Patton station was more or less obstructed at places by trees, shrubs, etc., is manifest from the evidence. As to what extent it was obstructed when near the crossing and when turning to make it, is not so clear.

A photograph in evidence, the camera having been placed on the right of way, thirty-nine feet west of the track, shows an uninterrupted view to the north. There is, however, some evidence that weeds, etc., were on the right of way when the accident occurred, which were not there when the photograph was taken. There were also trees to the north on the right of way which hindered, to some extent, the view to one just turning east to make the crossing. Appellee was cross-questioned at length as to the extent, if any, of the obstruction to his view after making this turn and while driving toward the track. From the drift of his testimony, and from other evidence in the case, it is fair to conclude, that when within

forty feet of the track, the view north was clear, and that for this distance appellee could have seen the headlight if he had looked. Assuming this to be the case, and assuming that the jury so found, and further assuming that while driving this forty feet, appellee did not look to see if a train was coming, should this court say that for this reason the judgment rendered should be reversed, thereby saying that such failure to look was negligence in fact that bars a recovery. Such failure is not negligence in law.

In Partlow v. I. C. R. R. Co., 150 Ill. 327, it is said by the court:

" It has often been said by this and other courts that it is the duty of a person approaching a railroad crossing to look and listen before attempting to cross, and that a person failing to observe that precaution is guilty of negligence; but where the statement has been made, the court, as a general rule, was discussing a question of fact, and in such cases the statement *may be regarded as accurate.* But the court can not say, as a matter of law, that the failure to look and listen is negligence."

In Illinois Central R. R. Co. v. Batson, 81 Ill. App. 142, we said :

" While it is true that a failure to look if a train is approaching, is not in itself, as a matter of law, such negligence as will prevent a recovery, but is a fact to be considered by the jury in passing upon the question of ordinary care, it is also true that it is the duty of one approaching a place of danger to do so cautiously, and that this duty is the more imperative when the crossing is peculiarly dangerous and the person approaching knows that it is dangerous."

Accepting these statements of the law as correct, it is important to consider all the circumstances in evidence as appellee approached the crossing and drove over it, in order to determine whether his failure to look while driving the forty feet nearest to the track can be reasonably excused, as not being negligence in fact.

Appellee testifies :

" The embankment there is tolerably steep, and that was its condition when I tried to cross it. I was driving a team consisting of a young horse six years old and a Texas pony. The horses would run away. They had run off a couple of

times, when they got scared. They were afraid of a train. As I approached the crossing I looked for the train in particular. It was dark and kind of cloudy that night. We had a moon, but clouds passed over it, and sometimes made it tolerably dark. I did not know whether the train had passed or not, and I have always told my children, and always did myself, be careful about railroads, because it is dangerous. As I came even with the switch-light I looked over to the switch-light. The switch-light is above the switch and the switch just below the crossing.

\*      \*      \*      \*      \*      \*      \*

Q. How near to the railroad track were you when you looked the last time for a train just before you crossed the track?

A. I commenced looking there before I got even with the switch-light. I looked toward the switch-light to see how far up the road I was, and kept watching up the road for a train, and after I passed the switch-light I kept watching up the road for a train until I came to where the wagon road turns across the railroad track to see whether there was anything up the road. After you come down from here (indicating on the map), and you look down here (indicating), you can see the switch-light from here (indicating). After I came round here (indicating) I looked to see if I was far enough up to see down the road, and threw my eye back up the road, and then I threw it back to the crossing and watched until my horses stepped up over the track, and when my wagon's front wheels struck the rails I kind of raised in my seat for my wheels to jump over the rail, and that is as far as I know. I don't know what happened after that. When I looked up the road I did not see the train at any time. I looked in particular. I always do. Of course I never stopped, or anything of that kind, but the door was opened, and if there had been a train coming I thought sure I could see it. I did not hear the train coming. I heard nothing. I did not see the train coming. I let my horses take their time, as I saw no danger in crossing, going very slow. My purpose in raising up was so that I would not be jolted; to break the jolt. \*  \*  \* When attempting to cross the track I never heard the bell nor the whistle. The track is near about straight above the place where I was struck—I would say about a mile, maybe more."

The switch-light referred to was sixteen rails, that being 480 feet south of the crossing.

If appellee's testimony is true, he exercised all the care and caution that he thought was necessary, realizing at the time, the danger of driving over a railroad track. If his testimony is true, he was not reckless, or indifferent, or careless. If it is true, the most that can be said, is, that while driving the forty feet nearest the track, he listened, but did not look up the track, but looked to see how to drive over it. If he both looked and listened while driving the 480 feet adjacent and parallel to the right of way and extending to the turn of the crossing, and neither saw nor heard a train, can it be said that it was negligence in fact, not to have continued looking, as well as listening, while driving the last forty feet nearest to the track? If he exercised this caution for the 480 feet nearest the crossing, can it be said that he was negligent in not keeping a lookout at places for the quarter of a mile drive from Patton station when the view was not obstructed? Common experience teaches, that if one looks and listens for a train for 160 yards before crossing a track, that this is ample time to discover its approach. Appellee had a right to presume that if a train was approaching, its bell, or its whistle, would be continuously sounded for eighty rods before reaching the crossing. There is nothing to indicate that his hearing was defective. It was in the still of the evening. If no signals are heard during a drive of 160 yards next to a crossing, the natural presumption of an ordinary man would be that no train was approaching. In the present case, steam being shut off, the usual noise of the train was absent. The engineer testifies: "It was down grade. We had shut off steam. Engine was unusually quiet passing down; just as quiet as possible for a train to pass down under the circumstances." Appellee testifies: "After I came to the turn to the crossing, I looked to see if I could see down the road, and then threw my eyes back up the road, and then to the crossing and watched until my horses stepped up over the track." The track was four or five feet above the surface of the ground, the tops of the rails four inches above the surface of the track, the night was

dark. Appellee knew that the crossing was not in good order. Was it strange or unusual, or the act of a careless and negligent man, who for 480 feet had looked and listened for a train, that for the next forty feet nearest the track, he "watched" the crossing, in order to drive over it instead of looking for a train? The jury considering the situation, if they believed the testimony of appellee, may have concluded' that such omission to look for these forty feet was not negligence and that what he did was what an ordinarily careful and cautious man would have done under the circumstances. This was for the jury to determine, and if they believed that appellee did what an ordinarily prudent and careful man would have done, they could do no less than find that he was not negligent.

In our judgment, it is not a case where we are justified in saying that their conclusion is unsupported by the evidence.

Counsel for appellant urges that the court erred in allowing the question to be asked and answered: "Was there any reason that evening as the. train approached that crossing that would prevent hearing the bell ring or whistle blown that did not usually exist?"

We see no valid objection to the question. It called for a statement of fact, and not for a "theory," as counsel suggests. It is true, that in a sense, it called for the conclusion of the witness, but the tendency of modern decisions is to admit such answers instead of a detail of all the facts upon which the conclusion is based. In Chicago & Alton R. R. Co. v. Dillon, 123 Ill. 577, in passing upon an objection to the statement of witnesses that in their opinion if the bell had been rung or the whistle sounded, they would have heard it, the court overruled the objection and said:

"Such questions are permitted as matter of convenience, and to avoid prolixity in the examination. When a witness says he was near enough, and would, in his opinion, nave heard or seen a given signal had it been given, he in effect says there was nothing to prevent his seeing or hearing it, as the case might be. The permitting of these questions to be asked, obviated the necessity of asking a

great many others, to prevent certain unfavorable infer-
ences that might be urged if not asked, such as, whether
their hearing was good, and if not, to what extent injured;
if good, whether their attention was attracted to anything
else at the time; whether there was any noise or confusion
which might have caused them not to observe or note the
fact that the signal was given, etc.   All implications
suggested by these and other questions of like character
that might be mentioned, were negatived by the simple
statement, that, in the opinion of the witnesses, if the sig-
nal had been given they would have heard it.   Moreover,
the competency of testimony of this kind is distinctly
recognized by this court in Peoria, Pekin and Jacksonville
Railroad Co. v. Siltman, 88 Ill. 531."

This decision is followed in Illinois Central R. R. Co. v.
Slater, 139 Ill. 200.   For the same reasons the court did
not err in overruling the objections made by counsel to the
questions asking if there were any reasons why signals could
not be heard.

The remark of the trial judge when admitting the photo-
graphs in evidence that " they may go to the jury for what
they are worth, *if anything*," should not have been made,
but we do not deem it reversible error.

The third instruction given for appellee is not as clear as
it should be, but we do not think that the jury would infer
from it that both the bell and whistle must be continuously
sounded.

The instruction referred to as the last refused instruction
for defendant was properly refused.   It singles out one
fact in evidence which was not a controlling fact, and calls
the attention of the jury to it.

It is urged that there is no evidence to warrant the giv-
ing of appellee's seventh instruction, which was to the effect
that if appellant's servants, by reasonable diligence, could
have seen appellee in the act of crossing the railway track,
and could have avoided the collision, etc.   Counsel say
" the evidence was absolutely conclusive that it was a dark
night, that the engineer and fireman could not see appellee
and his team until they came within the light of the head-
light, about fifty or seventy-five feet in front of the engine."

It is true that the fireman and engineer so testify. But they also testify that there was a bright headlight on the engine, and the jury may have believed that a bright headlight would show a covered wagon and horses, on, or close to a track, for more than fifty or seventy-five feet.

The case is a close one, upon the facts, but it is not a case, in our judgment, where the verdict should be set aside by a reviewing court.

Finding no material error in the record, the judgment is affirmed.