## Emil Schoeler, Appellee, v. City of Rockford, Appellant.

## Gen. No. 5419.

1. NOTICES—*when statute requiring giving to municipality not complied with.* *Held*, that the evidence failed to establish that the notice required by statute had been given to the municipality.

2. NOTICES—*effect of failure to give to municipality.* In the absence of proof that the plaintiff in an action against a municipality for personal injuries has filed with the city clerk a notice of the time and place of the accident, it is error for the court to refuse an instruction directing a verdict in favor of the municipality.

3. CONTRIBUTORY NEGLIGENCE—*when person injured upon sidewalk guilty of.* The jury without evidence of conditions or circumstances which excuse the ordinary precautions which would disclose danger, is not warranted in finding that failure to exercise such precautions is not negligence.

Action in case for personal injuries. Appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed March 16, 1911.

A. PHILIP SMITH and ROBERT REW, for appellant.

FRANK L. BARRY, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

Originally, between Cedar street and Kent's creek Winnebago street, running north and south in the city of Rockford, crossed a low place. Numerous switch tracks of the Burlington and Milwaukee railroads crossed this space making travel inconvenient, and a viaduct was built, over which the public traveled. The south end of the viaduct rested upon a stone abutment about 14 feet high on the south bank of the creek and on a level with Winnebago street at that point. When the Illinois Central Railway was built through the city,

the south end of the viaduct was lifted from the abutment and built further south on Winnebago street. The abutment was left standing. Prior to this extension, three houses had been built on the west side of Winnebago street, south of the creek and directly south of the south end of the viaduct as first constructed. In front of these houses was a cement sidewalk. It ended at about the north line of the north house. From such north line to the abutment there was no sidewalk. The distance was about 18 feet and was filled with dirt, stones and rubbish. The top of the abutment was about 5 feet wide, and the bed of the creek was 14 feet below the same. The west end of the abutment is a short distance from the west line of Winnebago street, and west of that line, covered with underbrush and trees, is the bank of the creek. When the viaduct was extended south it was raised in front of the three houses; and access to them from the east was barred. Along the west side of Winnebago street, from the south end of the viaduct, is a cement walk, being a continuation of the south walk in front of the three houses. Along each side of the viaduct from Cedar street at its north end, to its south end, is a sidewalk with a railing. The viaduct being narrower than the street, along the edge of its south end flush with the street is a walk, partly cement and partly wood, running east and west from the end of the sidewalk along the side of the viaduct to the cement walk along the west side of Winnebago street. In front of the last of the three houses is a wooden stairway about 8 feet long the foot of which rests upon the ground outside the east line of the cement walk; and the stairway slopes over the walk to the second story of the house, which was used as a store, and from which a wide platform extended to the viaduct. Water flows continuously in the creek, and on a still night its rippling can be heard at the last of the three houses. There was a city arc light located on the corner of

Winnebago and Cunningham streets about 120 feet south of the junction of the cement walk along the west side of Winnebago street with the piece of walk running east and west along the south edge of the viaduct; and another on the center of the viaduct. Between 8 and 9 o'clock on the evening of September 22, 1909, Emil Schoeler, with William Heppner and another companion, walked from the Chick House southward over the viaduct to the house of a friend on Corbin street, and there spent some time with a number of friends. About 11 o'clock, with one companion, William Heppner, he started back to the Chick House the same way he came. They passed the junction of the sidewalk running east and west along the south edge of the viaduct with the sidewalk running north and south along the west side of Winnebago street, went down the cement walk abreast in front of the three houses, passed the stairway sloping over the sidewalk, and onto the dirt, stones and rubbish between the end of the sidewalk and the abutment, and in some way which Schoeler cannot explain, and at some place between the end of the walk and the abutment which he cannot tell, they both fell off from either the space between the sidewalk and the abutment, or the abutment. He got up to the street and attracted the attention of a person who called an officer. The officer got his companion out and took them both to the police station and afterwards they were taken to a hospital. Schoeler claimed that he sustained injuries by the fall and brought this suit in the Circuit Court of Winnebago county against the city of Rockford to recover damages for such injuries. The declaration contained five counts; and charged, in substance, that the city negligently suffered the sidewalk ending near the abutment to remain in bad repair, the abutment unguarded and the locality unlighted in the night time; and averred that while Schoeler was passing over the sidewalk in the night time, in the exercise of due care for his safety,

he stepped off the end of the sidewalk on to and off from the abutment into the creek and was injured. The declaration also alleged that he filed with the city attorney and the city clerk the notice of the time and place of the accident as required by paragraph 7, chapter 70 of the Revised Statutes. A plea of not guilty was filed. At the close of Schoeler's evidence, and again at the close of all the evidence, the city moved the court to exclude all the evidence and instruct the jury to find it not guilty. The motions were denied and the instructions accompanying them refused. The trial resulted in a verdict of $1,000 for Schoeler. A motion for a new trial was denied, judgment was entered on the verdict, and the city prosecutes this appeal.

Paragraph 7, chapter 70 requires "any person who is about to bring any action or suit at law in any court against any incorporated city, village or town for damages on account of any personal injury shall, within six months from the date of injury, or when the cause of action accrued, either by himself, agent or attorney, file in the office of the city attorney (if there is a city attorney, and also in the office of the city clerk) a statement in writing, signed by such person, his agent or attorney, giving the name of the person to whom such cause of action has accrued, the name and residence of the person injured, the date and the hour of the accident, the place or location where such accident occurred and the name and address of the attending physician (if any)."

"The object of the statute is to furnish timely notice to the city, village or town of the fact that the party claims to have sustained an injury, and that he proposes to enforce his claim for damages against the said city, village or town by suit, and thereby enable said city, village or town to investigate the claim while the facts are fresh and the justice of the claim can be readily ascertained." Donaldson v. Village of Diet-

rich, 247 Ill. 522. "This statute should be strictly construed." Donaldson v. Village of Dietrich, *supra*.

On the trial the notice alleged to have been served on the city attorney and the city clerk was admitted in evidence over the objection of appellant. Two reasons are here urged against the sufficiency of such notice. The first is: that it was not filed in the office of the city clerk, and the second: that it did not definitely state the place of the accident.

Appellee's attorney testified that he served the notice "on the city clerk's office." The notice showed a receipt for a copy thereof, bearing the name of the city attorney and the city clerk. The city clerk testified that he did not sign the receipt, but that his name was placed there by a young woman employed in his office; that he never saw the notice; that he had made a search for it in the place where such notices were kept and no such notice was there; that it was not filed in his office. Appellee's attorney did not testify that he left the notice or a copy in the office of the city clerk. The young woman from the office of the city clerk testified that appellee's attorney came to the office, inquired for the clerk, and on being told that he was not present, asked if anyone signed for him and handed her two papers. She identified the paper admitted in evidence as one of those papers, and testified that the other was a notice in a suit brought by William Heppner, appellee's companion; that appellee's attorney took the papers away with him; that so far as she knew, the papers never came back; that all papers of this kind, after they had been seen by the clerk, were filed in an envelope kept for that purpose; that he had looked in the envelope for the paper, and that it was not there; that she had never seen a copy in any place around the office. There was no evidence offered that a notice was filed with the city attorney. In Hamilton v. Beardslee, 51 Ill. 478, it was held that to constitute the filing of a paper in a cause, it must be placed in the hands and under the control of the clerk, must pass into his ex-

clusive custody and remain within his power. And this holding was cited as authority in Coles v. Terrell, 162 Ill. 167, and we see no reason why this rule does not control the filing of the notice provided for by chapter 70. We therefore hold that appellee did not file with the city clerk the notice required by the statute.

This also disposes of appellant's objection as to the sufficiency of the notice.

Paragraph 8 of said act provides that if the notice is not filed as provided to be by paragraph 2, the suit shall be dismissed, and the person to whom such action shall have accrued for a personal injury shall be forever barred from further suing upon said cause of action. The Supreme Court has given the section a literal construction. Donaldson v. Village of Dietrich, *supra*. The giving of the notices required by the statute is a condition precedent to the city's liability, and constitutes an essential element of the plaintiff's cause of action. Walters v. City of Ottawa, 240 Ill. 259. The giving of the notice must be averred and proved by the plaintiff to avoid a dismissal of his suit (Erford v. City of Peoria, 229 Ill. 546; Walters v. City of Ottawa, *supra*), and the failure to give proper notice, or to prove it if it had been given, can be raised on the motion to dismiss, or by a motion to direct a verdict. Ouimette v. City of Chicago, 242 Ill. 501. Therefore, in the absence of proof that appellee filed with the city clerk a notice of the time and place of the accident, the court erred in refusing at the conclusion of all the evidence to instruct the jury to find appellant not guilty.

It is also urged that appellee's negligence contributed to the accident, and for that reason the judgment must be reversed.

Appellee testified that when, on the way south, they got to the end of the viaduct, they turned a bit to catch the other sidewalk; that there was a piece of cement walk projecting out from the sidewalk on Winnebago

street east towards the viaduct; that the lights from
the middle of the viaduct and the corner of Winnebago
and Cunningham streets shone on that place; that
when he came back the same way two hours later, the
lights were still shining on the junction of the side-
walks and he could see the place just as plainly when
he came back as when he went over; that he knew he
had to make the turn, but did not look for it; that as
they got by the junction it was very dark; that they
walked straight ahead about 200 or 300 feet; that they
could not see anything and did not stop to look around;
that he did not notice where the cement walk stopped;
that he did not remember walking on the space filled
with dirt, stones and rubbish; that he did not notice
any obstacles to travel on the way down; that he did
not hear the ripple of the water flowing in the creek;
and there was no evidence that his senses of sight and
hearing were not normal.  A witness testified that on
the night of the accident she saw a man on the curb-
ing and called an officer.  The officer testified that he
found appellee hanging onto a tree; that he asked him
what kind of a drinking party he had been to, to get
into that condition; and he said that he did not know
that it was any of the officer's business.  Appellee told
the officer he had a partner.  The officer asked, "Where
is he?"  Appellee said, "I don't know where he is."
The officer asked, "Where do you think he is?"  Ap-
pellee said, "I don't know, he fell down a ravine some-
where."  The officer inquired, "Is it west, or is it to-
wards the viaduct?"  Appellee said, "I don't know
where it is, we just tumbled off and that is all I know
about it."  The officer called the patrol, and he and
another officer got appellee's partner out of the ravine
and took them to the station, and from there they were
taken to a hospital by two other officers, to whom ap-
pellee admitted that he had been drinking.  The offi-
cers testified that they smelled liquor on him; that he
was under its influence.  Three of appellee's friends

who were with him at the place on Corbin street testified that he drank some wine, but denied that he was drunk when he left there. Appellee's own testimony and conduct, however, strongly tend to corroborate the evidence of the officers that he was intoxicated, and there can be but little doubt that he was in a drunken condition. Appellant might reasonably expect that intoxicated and reckless persons would have occasion to use its sidewalks, but as it was not an insurer against accidents, it was not bound to have its sidewalks so well lighted or guarded that persons proceeding with a reckless want of care might go safely along. City of Chicago v. Apel, 50 Ill. App. 132.

The evidence shows that appellee did not walk into danger at one step. He knew when he stepped from light to darkness, and must have known when he walked underneath the stairway and the platform, and must have known that some of the distance he walked on rubbish and stones, and that he was out of the traveled way. He walked long enough in the darkness to reflect, investigate and retrace his steps. While his conduct might not indicate negligence *per se,* it did indicate negligence in fact, as there were no conditions or circumstances which excused him from passing over the sidewalk onto the stones and rubbish between the end of the sidewalk and the abutment in the dark, where the exercise of slight precautions would have disclosed the danger. A jury, without evidence of conditions or circumstances which excuse the ordinary precautions where their exercise would have disclosed the danger, is not warranted in finding that such failure to exercise such precautions is not negligence. I. C. R. R. Co. v. Batson, 81 Ill. App. 142; Cotter v. C. C. Ry. Co., 141 Ill. App. 101. Appellee's passing the place known to him to be the approach to the viaduct and heedlessly walking the distance he testified to in the dark without taking any precaution for his safety, was, in our opinion, negligence of the most pronounced sort.

We think that appellee's own testimony shows that he did not exercise ordinary care for his own safety, and that he was guilty of negligence which directly contributed to his injury; and for that reason also, the judgment must be reversed.

*Reversed.*

Finding of facts to be incorporated in the judgment: We find that a notice of the injury was not filed with the city clerk as required by the statute; and that appellee was guilty of negligence contributing to his injury.