## Ninian H. Welch, Administrator, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 20,962.

1. STREET RAILROADS, § 64*—*what constitutes negligence at crossing.* To drive an electric car at a speed which makes it impossible to stop within less than twenty-five feet, directly alongside and past another car which is standing at a public street crossing unloading

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

passengers is negligence, since under such circumstances a motorman should proceed slowly and cautiously and have his car under such control that it could be stopped at once.

2.   STREET RAILROADS, § 64*—*what may be relied on in operation of car at crossing.*   In passing behind a street car standing on one of two parallel tracks, the view of the car approaching from the opposite direction on the other track is obstructed by the standing car until the distance from a place of safety to one of danger is but a step or two, and in such case the pedestrian or passenger has a right to rely upon his sense of hearing as well as of sight and to expect the approaching car to give warning of its approach, and to observe city ordinances as to speed.

3.   APPEAL AND ERROR, § 1411*—*when Appellate Court not justified in disturbing verdict of jury.*   Where there is sufficient evidence upon an issue of fact to warrant its submission to the jury, the Appellate Court is not justified in disturbing the verdict of the jury upon that issue unless such verdict is clearly and manifestly against the weight of the evidence.

4.   APPEAL AND ERROR, § 1411*—*what is duty of court on appeal as to verdict.*   Where it is assigned that a verdict is against the weight of the evidence, it is the duty of the Appellate Court to examine and weigh the evidence, but that duty does not permit the court to substitute its judgment for that of the jury on a pure question of fact, unless the conclusion of the jury is palpably wrong.

5.   APPEAL AND ERROR, § 1411*—*when verdict will not be disturbed on appeal.*   Verdict as to negligence of street railway or as to contributory negligence of person struck by car while passing behind another standing car, *held* not manifestly against the weight of evidence.

6.   INSTRUCTIONS, § 89—*when instruction as to number of witnesses not erroneous.*   An instruction, stating that "the fact that the number of witnesses testifying on one side is larger than the number testifying on the other side does not necessarily alone determine the preponderance of the evidence is on the side for which the larger number testified," and also stating the matters which the jury might take into consideration in determining the preponderance of the evidence, without again referring to the number of witnesses, is not prejudicially erroneous, under the facts of this case.

Appeal from the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1914.   Affirmed.   Opinion filed October 6, 1915.

FRANK L. KRIETE and WATSON J. FERRY, for appellant; W. W. GURLEY and J. R. GUILLIAMS, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

John A. Bloomingston, for appellee.

Mr. Justice Fitch delivered the opinion of the court.

By this appeal the Chicago City Railway Company, appellant, seeks to have reversed a judgment entered against it in the Circuit Court of Cook county, for $1,267.67, in favor of appellee; the administrator of the estate of Karolina Jankus, deceased, who was struck and killed by one of appellant's street cars at the intersection of Wentworth avenue and Sixty-second street in the city of Chicago, about 6:30 a. m., on September 20, 1911. As grounds for reversal, appellant claims, first, that the deceased was guilty of contributory negligence; second, that the verdict is against the manifest weight of the evidence; and third, that the court gave an improper instruction on behalf of appellee.

The deceased was a Russian, twenty-five years of age at the time of her death, unmarried, and, prior to her death, was living with her sister on Paulina street, near Forty-fifth street, in Chicago. She was working in a factory located on LaSalle street, just north of Sixty-second street. Wentworth avenue, Paulina street and LaSalle street run north and south, and LaSalle street at Sixty-second street is a block east of Wentworth avenue. Appellant operates a double-track electric street car line on Wentworth avenue. The west track is used for southbound cars and the east track for northbound cars. These tracks are five feet apart and cars pass about a foot from each other. On the morning of the accident Miss Jankus, in going to her work, boarded one of appellant's street cars on Wentworth avenue in the neighborhood of her home. The car was well filled with passengers, among whom were several who were working in the same factory with Miss Jankus. The car in which she was riding stopped to let off passengers at or near the south crossing of Sixty-second street. Miss Jankus was the

first to alight. She stepped down from the rear platform, and walked around the back end of the car to go east on Sixty-second street. As she stepped from behind the car that was standing at the crossing she was struck by another car coming north on the adjoining track, and was thrown to the ground. Her clothing was caught in the wheels of the front truck, and she was dragged along until the car stopped north of the north crossing. Three witnesses, who were immediately behind her when she was hit by the northbound car, testified that they did not hear any bell ringing on that car before the accident happened, that when the deceased was about on the east rail of the west track she turned her head and looked to the south, then moved forward two steps, and was struck by the car on the other track. The motorman of the northbound car testified that the deceased was hit by the "grab handle" which is located just south of the front corner of the car; but all the other witnesses who saw her at the moment of the collision testified that she was struck by the front end of the street car, near the northwest corner of the car. The motorman also testified that he was sounding his gong; that he had shut off the power of his motor before he reached the crossing, and was "drifting six or seven miles an hour with no power on"; that when he saw Miss Jankus step from behind the other car he applied the brakes and reversed the motor, coming to a stop about thirty-five feet away; that when he first saw the deceased she was ten or twelve feet away from him; that he could not stop his car within that distance when going six miles an hour; that in order to stop a car in that distance it "would have to be going about two or three miles an hour"; and that "with the reverse lever, going at a mile and a half or two miles an hour, you could stop it in from six to seven feet, or maybe a couple of feet less." There was other evidence tending to prove that the northbound car was moving at a much higher rate

of speed than seven miles an hour; but whatever the speed was, the motorman admitted that he did not have his car under such control that he could have stopped it in less than twenty-five feet.

From this evidence, it seems clear to us that if the motorman had exercised ordinary care, under the circumstances, the accident would not have occurred. To drive an electric car at a speed which makes it impossible to stop within less than twenty-five feet, directly alongside and past another car which is standing at a public street crossing unloading passengers, is, to say the least, not a reasonably prudent thing to do. All reasonable minds must agree that ordinary care, under such circumstances, requires a motorman to proceed slowly and cautiously, and to have his car under such control that he could stop it at once, if necessary. The evidence shows that the cars passed so close to each other that the deceased could not see the approaching car until it was nearly upon her. It does not appear from the evidence that she was running, or was unmindful of her surroundings. On the contrary, the evidence tends to prove that just before she stepped in front of the northbound car she looked to the south and listened for the approach of a car from that direction. Seeing or hearing nothing, she advanced two steps and was killed.

Several cases, decided by another branch of this court, have been cited by appellant's counsel, which seem to hold that under circumstances somewhat similar to those shown by the evidence in this case, the failure of the person injured to "stop, look and listen" before stepping from one of two parallel tracks to the other is such contributory negligence as will preclude a recovery. None of such cases holds in terms that under such circumstances the failure of the person injured to stop, look and listen makes him guilty of negligence *per se,* and as a matter of law, but in

each of such cases the conclusion reached by the court is a finding of fact from the evidence.

In several of such cases, the case of *Illinois Cent. R. Co. v. Batson,* 81 Ill. App. 142, is cited with approval. In that case, the court, after quoting from sundry other cases in this State, said: "These authorities, and many others that might be cited, warrant the statement that while a failure to look if a train is approaching is not in law negligence *per se,* it is negligence in fact, *if there are no conditions or circumstances which excuse looking.* And a jury, without evidence of conditions or circumstances which excuse looking, when looking would disclose the danger, is not warranted in finding that such failure to look is not negligence." Conceding this to be a fairly accurate statement of the rule in such cases, it will be seen that if in any case similar to that here involved, there is evidence of conditions or circumstances which excuse looking, when looking would have disclosed the danger, then the mere failure to look is not decisive upon the question of contributory negligence, either as a question of fact or as a question of law.

In passing behind a street car standing on one of two parallel tracks which are as near to each other as those on Wentworth avenue, the view of a car approaching from the opposite direction on the other track is obstructed by the standing car until the distance from a place of safety to one of danger is but a step or two. In the recent case of *Stack v. East St. Louis & S. Ry. Co.,* 245 Ill. 308, 1 N. C. C. A. 687, the plaintiff stepped off the rear platform of a car, passed around the back end of the car, and was struck by another car going in the opposite direction. There was evidence tending to prove that the car which struck the deceased was running at an excessive rate of speed, that no gong was sounded, and that the car which struck him was within two or three feet of him as he came from behind the other car. After stating these conditions and circum-

stances, the court said: "It was possible for him (the plaintiff) by the exercise of a sufficiently high degree of care, to have discovered the eastbound car and not have got in its way. *He had, however, a right to rely upon his sense of hearing as well as of sight, and to expect the appellant, in running its car past another car stopped for the discharge of passengers, to give warning and to observe the ordinance of the city in respect to speed.* While the negligence of the appellant did not relieve the deceased from the necessity of exercising care for his own safety, it is to be considered in determining whether his conduct was such as an ordinarily prudent man might have adopted under the circumstances, and that question was properly submitted to the jury." (Italics ours.)

It has been repeatedly held—so often, in fact, that a citation of authority is unnecessary—that where there is sufficient evidence upon any issue of fact in any case to warrant its submission to the jury, the Appellate Court is not justified in disturbing the verdict of the jury upon that issue, unless the verdict is clearly and manifestly against the weight of the evidence. Where it is assigned for error in this court that the verdict is manifestly against the weight of the evidence, it is the duty of this court to examine and weigh the evidence; but this duty does not require nor permit this court to substitute its judgment for that of the jury on a pure question of fact, unless the court can say that the conclusion reached by the jury is palpably wrong. In this case, the deceased was at a public crossing. Her rights there were equal to those of appellant. She was required to exercise ordinary care for her own safety, and appellant was likewise required to exercise ordinary care in the operation of its street cars to avoid injury to her. The care required of the deceased was no greater that that required of appellant. If appellant's motorman had been exercising ordinary care, the accident would not have hap-

pened. If the deceased had used extraordinary care, doubtless the accident would not have happened. She had a right, however, as is said in the *Stack* case, *supra*, to rely upon her sense of hearing as well as of sight, and to expect the appellant, in running its cars past another car stopped for the discharge of passengers, to give warning and to proceed with such speed as the circumstances reasonably required.

We therefore conclude that upon the facts of this case the verdict of the jury is not manifestly against the weight of the evidence, either as to the negligence of the defendant or as to the alleged contributory negligence of the deceased.

Complaint is also made that the court erred in giving an instruction, in which, after stating that "the fact that the number of witnesses testifying on one side is larger than the number testifying on the other side does not necessarily alone determine the preponderance of the evidence is on the side for which the larger number testified," the matters which the jury may take into consideration in determining the preponderance of the evidence were enumerated, without again referring to the number of witnesses. It is true that more witnesses testified on the side of appellant than on the side of appellee, but an examination of their evidence discloses the fact that practically the same number of witnesses testified on each side as to the essential and important facts regarding the accident. For the reasons stated by Mr. Justice Scanlan in the recent opinion in the case of *Christ v. Chicago Rys. Co.*, 191 Ill. App. 69, we think the giving of this instruction was not prejudicial error in this case.

For the reasons indicated, the judgment of the Circuit Court will be affirmed.

*Affirmed.*